UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

ADRIAN L. JOHNSON

        v.                                    CAUSE NO.: 1:21-CR-17
                                                      (1:25-CV-28)

UNITED STATES OF AMERICA

## OPINION AND ORDER

Adrian L. Johnson ("Johnson") is a convicted methamphetamine trafficker serving a 180-month sentence followed by 12 years of supervised release. Pending before the Court is Johnson's Petition to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF Nos. 99) and his subsequent Amended Motion (ECF No. 103), in which he asserts that he received ineffective assistance of counsel. The Government responded in opposition (ECF No. 108) to which Johnson replied waiving several arguments initially raised but maintaining the assertion that he received ineffective assistance of counsel during the sentencing phase. (ECF No. 111). The parties have fully briefed the motions, (ECF Nos. 100, 104, 108, 111) and the matter is ripe for consideration. Because this Court finds no constitutional deficiency in counsel's representation, Defendant's motion will be DENIED and no certificate of appealability will issue.

## FACTUAL BACKGROUND

Johnson was charged in a three-count superseding indictment with possessing a controlled substance with intent to distribute, in violation of 21 U.S.C. §841(a)(1) (Count 1); being a felon in possession of a firearm, in violation of 18 U.S.C § 922(g)(1) (Count 2); and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 3). (ECF No. 26).

The details of Johnson's offense are captured in the Presentence Investigation Report. (ECF No. 72, PSR at ¶¶s 8-23). On January 26, 2021, Johnson was stopped for an expired registration while driving a Chevy Equinox. After being stopped, Johnson could not produce a license or a vehicle registration but produced a bill of sale for the vehicle dated September 12, 2020. The officer discovered Johnson had a suspended license, called for backup, and placed him in the back of the assisting officer's vehicle. The officer who initiated the stop walked his police canine around the car and the dog alerted for the presence of drugs in the vehicle. Upon searching the vehicle, officers located a smoking device with methamphetamine residue on it. Johnson was then placed under arrest and during the search of his person, the officer located a marijuana smoking device and $1,678. When the search of the vehicle continued, the officers located 56 grams of controlled substances, a Hi-Point C9 9mm pistol with no serial number, a Ruger Security-9 9mm pistol, and a digital scale. The controlled substances were field tested, and 46 grams were found to contain a mix of methamphetamine and fentanyl and the other substances weighing 10 grams contained a mixture of methamphetamine, fentanyl, ephedrine, ANPP, BMPD, and Diphenhydramine.

Johnson moved to suppress evidence obtained as a result of the traffic stop and search of the vehicle. (ECF No. 34). The Court, finding no basis for suppression, denied the motion. (ECF No.51). Subsequently, in May 2022, Johnson pleaded guilty pursuant to a written plea agreement. (ECF No. 55) In his plea agreement, Johnson agreed to plead guilty to Counts 1 and 3. In exchange for his guilty plea and a broad appeal waiver, the Government agreed to a minimum-range recommendation, acceptance of responsibility reductions, and dismissal of Count 2. (ECF No. 55) Johnson did, however, preserve the right to challenge on appeal this Court's Order denying his motion to suppress (ECF No. 55). On October 19, 2022, the Court sentenced Johnson to a total of

180 months of imprisonment consisting of 120 months on the drug count and a consecutive 60 months on the firearm count, with 12 years of supervised release to follow. (ECF Nos. 78-79, 82). Consistent with his plea agreement Johnson filed a direct appeal challenging the Court's order on the motion to suppress. The Seventh Circuit denied Johnson's appeal and affirmed the judgment of this Court. (ECF No. 85). Johnson timely filed the present petition claiming that counsel provided ineffective assistance in various areas of the representation.

## DISCUSSION

a. **Legal Standards**

Relief under 28 U.S.C. § 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). To proceed on a motion pursuant to § 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence went beyond the maximum authorized by law or is otherwise subject to collateral attack. *Id.* A § 2255 motion is neither a substitute for nor a recapitulation of a direct appeal. *Id.* As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992). Additionally, aside from showing "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a § 2255 movant may alternatively pursue such errors after proving that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *Johnson v. Loftus*, 518

3

F.3d 453, 455–56 (7th Cir. 2008). This general rule does not apply to claims of IAC, which may be brought via § 2255 even if not pursued during a direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Johnson's initial §2255 motion asserted that his appointed counsel Thomas O'Malley should have specifically challenged both the duration of the traffic stop and the use of a drug dog in the motion to suppress (ECF No. 100, at 1). That argument is a non-starter for two reasons: first, in later briefing Johnson conceded all issues relating to the filing of his motion to suppress (ECF No. 111 at 1); and second, this issue is procedurally defaulted as it was raised on appeal by appellate counsel and the Seventh Circuit expressly rejected the arguments Johnson seeks to raise now. Accordingly, Johnson's attempt to challenge counsel's arguments related to the motion to suppress will not be considered.

With respect to Johnson's remaining arguments, the Sixth Amendment guarantees criminal defendants "the right ... to have the Assistance of Counsel for [their] defence." The right to counsel includes "'the right to the effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)). Under *Strickland*, a defendant who claims ineffective assistance of counsel must prove (1) "that counsel's representation fell below an objective standard of reasonableness," 466 U.S. at 687–688, and (2) that any such deficiency was "prejudicial to the defense," *id*., at 692. A court may address these prongs in either order and need not address both if the defendant makes an insufficient showing on one. *Id.* at 697.

To establish the performance prong of the *Strickland* test, Johnson must show that his attorney's performance failed to meet an objective standard of reasonableness under prevailing

4

professional norms. *Strickland*, 466 U.S. at 687–88. The court's "scrutiny of counsel's performance [is] highly deferential," *id.* at 689, and Johnson "must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (citations omitted) (internal quotation marks omitted). In assessing counsel's performance, the court does "not second guess the reasonable tactical decisions of counsel." *Johnson v. Thurmer*, 624 F.3d 786, 792 (7th Cir. 2010).

As for prejudice, there is again a presumption that the defendant has not suffered prejudice. *Perrone v. United States,* 889 F.3d 898, 908 (7th Cir. 2018). To prevail on this prong, generally a defendant must show that "but for counsel's errors, there is a reasonable probability that the result would have been different." *United States v. Graf*, 827 F.3d 581, 584 (7th Cir. 2016). In the context of a guilty plea, a defendant must show that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (citation omitted). To make this showing, the defendant "must do more than simply allege 'that he would have insisted on going to trial.'" *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010) (citation omitted). He must "come forward with objective evidence that he would not have pled guilty," such as evidence regarding "the nature of the misinformation provided by the attorney to [him] and the history of plea negotiations." *Id.* In the context of sentencing, a defendant "must show that but for his counsel's unprofessional error, there is a reasonable probability that the results [of the sentencing hearing] would have been different." *Berkey v. United States*, 318 F.3d 768, 773–74 (7th Cir. 2003).

b. **<u>Analysis</u>**

5

Although his arguments have changed throughout the briefing, the Court construes Johnson's remaining arguments to be that his counsel was ineffective by failing to object to the purity and drug amounts listed in the Presentence Investigation Report (PSR), failing to object to the sentence, and failing to ensure Johnson understood the required burden of proof prior to agreeing to plead guilty and, again, during the plea colloquy (ECF No. 104). The Court addresses each of these arguments in turn.

1. *Counsel's failure to challenge the indictment or object to the purity and drug amounts did not affect the sentence.*

Johnson was charged in Count 1 of the superseding indictment with possession with intent to distribute 5 grams or more of methamphetamine and less than 40 grams of fentanyl in violation of 21 U.S.C. §841(a)(1). The penalties for charges under that statute vary based on factors like the type and quantity of the substances and whether the defendant has prior final convictions for a serious drug or violent felony. *See* 21 U.S.C. §§ 841(b)(1)(B) and 851(a)(1). Here, because Johnson had a qualifying prior conviction, the charge in Count 1 carried a statutory mandatory minimum of 10 years and a statutory maximum of life imprisonment. §841(b)(1)(B)(viii). Johnson argues that counsel should have challenged the indictment because it did not explicitly reference whether the methamphetamine was a mixture or ice/actual. He believes the purity of the methamphetamine increased his sentence and so he believes that the Government was required to allege the purity of the methamphetamine in the indictment and prove it beyond a reasonable doubt. *Apprendi v. New Jersey,* 530 U.S. 466 (2000)*. See also*, *Alleyne v. United States*, 570 U.S. 99, 103 (2013). He is wrong.

Together *Apprendi* and *Alleyne* hold that any fact that increases the penalty for a crime beyond the statutory minimum or beyond the statutory maximum must be submitted to the jury and proven beyond a reasonable doubt. *United States v. Morales,* 2023 WL 2402878 (N.D. Ill. March 8, 2023) ("…[U]nder *Apprendi* and *Alleyne*, the Sixth Amendment requires that a jury find beyond a reasonable doubt any fact that would increase a statutory maximum or minimum penalty) (internal citations omitted). Here, however, the determination of the drug purity does not expand either of these statutory calculations nor is it an element of the offense that needs to be contained in the indictment and proved beyond a reasonable doubt. *See United States v. Lutcher,* 87 F.3d 1312 (5th Cir. 1996) (holding that drug purity is not an element of possession with intent to distribute); *United States v. Corona-Gonzalez*, 2024 WL 4647937 (7th Cir. 2024) ("The government was not required to prove the purity level at trial."). Instead, drug purity may be an issue at sentencing as the purity level alters the calculation of the guidelines range. *See Bonk v. United States*, 2022 WL 422157 (C.D. Ill. Feb. 11, 2022) ("[W]hether the methamphetamine was a mixture, or ice only matters for determining the advisory sentencing guidelines level, drug purity is not an element of the offense"). Accordingly, Johnson's protestations to the contrary, the drug purity was not required to be determined by the jury beyond a reasonable doubt and counsel could not have been ineffective for failing to raise the issue either by challenging the indictment or some other means.[1]

---

[1] The Seventh Circuit has "repeatedly held that when a defendant is sentenced to a term of imprisonment within the statutory maximum for the crime of which he was convicted, *Apprendi* is beside the point." *United States v. Roberts*, 534 F.3d 560, 573 (7th Cir. 2008) (quoting *United States v. Jones*, 245 F.3d

Nor was counsel ineffective for not objecting to the purity calculation at sentencing as the sentence imposed was the minimum permitted by statute. The probation officer, when calculating the guidelines range, placed Johnson's base offense level at 30 because the offense involved 1,023.52 kilograms of converted drug weight. Detailed in ¶¶'s 18 - 20 of the PSR, a DEA Chemical Analysis Report shows that the defendant possessed 42 grams of methamphetamine (actual) and 10 grams of a mixture of methamphetamine and fentanyl. The officer converted these amounts using the formula that benefitted Johnson with the least amount of converted drug weight. After taking into account reductions for acceptance of responsibility, Johnson's total offense level was 27. Factoring in Johnson's criminal history category of IV, the advisory guidelines range was 100-125 months. Due to application of the statutory minimum sentence, the effective guidelines calculations was 120-125 months. Ultimately, Johnson was sentenced on Count 1 to 120 months – the minimum allowable given the statutory penalty. Counsel cannot be ineffective for failing to raise an objection that resulted in the imposition of the shortest sentence authorized by law.[2]

  2. *Defendant entered a knowing and voluntary plea.*

Next, Johnson asserts that counsel was ineffective because he failed to advise him of various facts related to his guilty plea. He contends he was unaware of the burden of proof required for a conviction and the statutory minimum penalty he faced.

---

645, 649 (7th Cir. 2001)). The same is true of *Alleyne*. Johnson was sentenced to the minimum sentence on Count 1 of 120 months.

[2] To the extent Johnson argues that his plea agreement was not voluntary because he was not advised by counsel that drug purity was required to be proved beyond a reasonable doubt, the argument fails. Correctly advising a defendant about the state of the law is not grounds for a Sixth Amendment violation.

After Johnson signed the plea agreement (ECF No. 55), he engaged in a thorough Rule 11 plea colloquy before Magistrate Judge Susan Collins. (ECF No. 59). Johnson was informed of his rights in both the written plea agreement he signed as well as during the plea colloquy. While under oath during the hearing Johnson represented that he: (1) was not under the influence of any drugs, medications (aside from blood pressure medication) or alcohol; (2) had not been treated for mental illness; and (3) had not been treated recently for addiction to narcotic drugs or substance abuse. When asked if he understood what was happening in court and why he was there, Johnson responded "yes" and that he was in court "to plead guilty to Counts 1 and Count 3." (Transcript of Plea Hearing, ECF No. 90, "Plea Tr." at 12 ).

When asked by Magistrate Judge Collins if he had an opportunity to talk to counsel about the charges in the Superseding Indictment and his case as a whole, Johnson responded with "Yes, several, several times." (Plea Tr. at 12). A similar affirmative response was given when asked if he had an opportunity to discuss the plea agreement with counsel and whether he understood the plea agreement. (Plea Tr. at 14).

The Magistrate Judge asked Johnson whether anyone had made any promises or assurances to him not in the plea agreement to induce him to plead guilty, whether anyone had threatened him to get him to plead guilty, and whether there were any side agreements not contained in the plea agreement. He answered no to each question. (Plea Tr. at 15). Johnson affirmatively stated that his guilty plea was voluntary and given freely. (Plea Tr. at 19). He further indicated that he read the plea agreement, understood it, and there was nothing in the plea agreement he did not understand. The court then proceeded to examine Johnson about special provisions contained in his plea agreement, including discussing paragraphs 6 and 8 with him.

9

Next, Magistrate Judge Collins advised Johnson of the mandatory statutory minimum sentence for Count 1, explaining that "because you have a prior final conviction for a serious drug felony or serious violent felony," the law required "not less than 10 years" of imprisonment (Plea Tr. at 20). When asked if he understood these consequences, Johnson replied, "yes" (*Id.*). The Magistrate Judge also made clear that the court could not impose a sentence lower than the statutory minimum, regardless of the advisory guideline range, and Johnson again confirmed his understanding (*Id.* at 20-21). With respect to Count 3, Johnson was advised that the statutory minimum sentence was 60 months and that this term was consecutive to any term of imprisonment imposed on Count 1. (*Id.*).

The court ensured Johnson understood the rights he was giving up if he pleaded guilty, including his right to a trial by jury, to cross-examine witnesses, call and subpoena witnesses on his own behalf, the right to testify and the right to have the Government prove its case beyond a reasonable doubt. (Plea Tr. at 24).[3] (Plea Tr. at 24).

With respect to establishing a factual basis for the guilty plea, Johnson stated, "I was in possession of a controlled substance and I was also in possession of firearms related to that controlled substance." (Plea Tr. at 27-28). In response to further inquiry from the Magistrate Judge, Johnson confirmed that he possessed the controlled substance on January 26, 2021, in the Northern District of Indiana, he knew the substance was a controlled substance and he intended to both sell

---

[3] When Johnson chose to plead guilty, he waived his right to challenge the sufficiency of the indictment. (ECF No. 90, p. 24, 35) See *United States v. Dowthard,* 948 F.3d 814, 817 (7th Cir. 2020) (citing *United States v. Wheeler,* 857 F.3d 742, 744 (7th Cir. 2017)) (defendant's "guilty plea waived his right to assert that the indictment failed to state an offense").

and use them. (*Id.* 28-29). Johnson admitted having two 9mm firearms and told the Magistrate Judge that he had them "for personal protection and because I had drugs and money on me." (*Id.* at 29). With respect to the quantity of controlled substances, Mr. O'Malley told the Court:

> Counsel: Mr. Johnson and I have discussed this at length. The methamphetamine involved was, I believe, 46 grams in weight, however, the purity of the meth has never been determined. I have explained to Mr. Johnson that the weight of the drugs are not an element of the crime. They are an element that comes in when the penalty is determined. And in the extremely unlikely event that the weight would come back -- the actual content of methamphetamine would come back at under 5 grams, then we would not be looking at the penalties that have been announced in this case. However, his culpability as to Count One and Count Three would still be…

(*Id.* at 30-31). Thereafter, the Government provided its proffer of the evidence that would be presented if Johnson went to trial. When asked if he agreed to the Government's summary Johnson indicated he did.[4]

"Rule 11 requires judges to take such great care in accepting guilty pleas to ensure that entry of a plea is not a meaningless act." *United States v. Graf*, 827 F.3d 581, 586 (7th Cir. 2016) (citing *United States v. Ellison*, 798 F.2d 1102, 1106 (7th Cir. 1986)). Indeed, "[t]he whole point" of the plea colloquy is to ensure that the plea was knowingly and voluntarily made. *United States v. Standiford,* 148 F.3d 864, 868 (7th Cir.1998). Thus, a claim that can succeed only if the defendant lied to the judge during the plea colloquy "may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *United States v. Peterson,* 414 F.3d

---

[4] Johnson's plea was a conditional one and so his counsel made the record that Johnson disagreed with certain facts and arguments related to the motion to suppress. However, Johnson agreed with the general offense conduct.

825, 827 (7th Cir.2005); *accord United States v. Messino,* 55 F.3d 1241, 1248 (7th Cir.1995). This is because "statements made to a federal judge in open court are not trifles that defendants may elect to disregard." *United States v. Stewart,* 198 F.3d 984, 987 (7th Cir.1999).

The above record confirms that the Magistrate Judge did what Rule 11 requires. Johnson was thoroughly advised of all pertinent factors of the plea agreement itself, the rights he was giving up by entering the plea, and the minimum and maximum sentences he would face. He cannot now create a factual issue by contradicting, under oath, a prior sworn statement. *United States v. Stewart*, 198 F.3d 984, 986 (7th Cir. 1999). *See also United States v. Collins,* 796 F.3d 829, 835 (7th Cir. 2015) ("The entry of a plea is not a meaningless act. When a defendant makes representations at a plea hearing, those representation are entitled to a presumption of verity."). Further, the proper Rule 11 colloquy cures any assertions by Johnson that his plea was the product of misguided advice from Mr. O'Malley or that counsel did not explain the consequences of the plea. *United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017) ("When an ineffective-assistance claim is based on misleading information regarding the consequences of a plea, a proper plea colloquy is generally deemed to cure any misunderstanding the defendant may have had about the consequences of the plea." (citing *Ewing v. United States*, 651 F405, 410 (6th Cir. 2016))). Thus, Johnson's claim that counsel improperly advised him prior to pleading guilty or during the change of plea colloquy is DENIED.

## **DENIAL OF CERTIFICATE OF APPEALABILITY**

Rule 11(a) of the Rules Governing Section 2255 Proceedings in United States District Courts instructs the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." 28 U.S.C. 2253(c)(2) provides that a certificate of

appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." To meet this standard, the petitioner "must have a constitutional claim (or an underlying procedural argument on which a constitutional claim depends), and he must 'demonstrate that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong.'" *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (quoting *Tennard v. Dretke*, 542 U.S. 274, 281 (2004)); *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Johnson has not made a substantial showing of the denial of a constitutional right. Having thoroughly reviewed the record before the Court, the undersigned concludes that reasonable jurists would not find the disposition of his ineffective assistance claim debatable or wrong. Accordingly, this Court **DENIES** issuance of a certificate of appealability.

## CONCLUSION

For the reasons discussed, the Court DENIES Defendant's Motion to Vacate Sentence under 28 U.S.C. § 2255 (ECF No. 99); GRANTS ECF No. 103 to the extent it requests leave to amend the previously filed petition but DENIES ECF No. 103 on the merits of the amended claims. The Court also DECLINES to issue a certificate of appealability.

SO ORDERED on July 29, 2025.

*s/ Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT